UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CR. No. 05-10052-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| JEREL LESLIE | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S MOTION TO
## SUPPRESS EVIDENCE AND STATEMENTS

Now comes the Defendant in the above referenced matter by and through his undersigned attorney requests that this Honorable Court suppress all evidence and statements obtained by the Government on December 18, 2004 in Brockton from the Defendant.

As grounds the Defendant states that the Police Officer did not have a reasonable suspicion of criminal activity at the time of the stop of the motor vehicle in which the Defendant was a passenger. All of the physical evidence and statements obtained by the Government were a result of this illegal stop. As such all of the evidence must be suppressed as being fruit of the poisonous tree.

Defendant's Memorandum of Law is attached hereto in support of this Motion.

                                    **JEREL LESLIE**
                                    By his attorney,

                                  /s/ ***Albert F. Cullen, Jr.***
                                  BBO# 107900
                                  60 K Street
                                  Boston, MA 02127
Dated: September 21, 2005         (617) 268-2240

I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

                                  /s/ ***Albert F. Cullen, Jr.***
                                  Albert F. Cullen, Jr.

Case 1:05-cr-10052-RCL    Document 17    Filed 09/21/2005    Page 2 of 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CR. No. 05-10052-RCL |
| | ) | |
| v. | ) | |
| | ) | |
| JEREL LESLIE | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORTOF HIS MOTION TO
SUPPRESS EVIDENCE AND STATEMENTS**

**I. FACTS**

The following alleged facts are taken from Officer Steven E. Johnson's report (attached hereto as Exhibit 1), the Defendant, Jerel Leslie's affidavit (attached hereto as Exhibit 2 and the testimony of both Officer Johnson and the Defendant's Licensed Investigator Mark William Chauppette at a March 16, 2005 hearing at the Brockton District Court on the Defendant's Motion To Suppress.[1]

On December 18, 2004, at approximately 3:21 AM Officer Johnson was patrolling in the City of Brockton in a marked cruiser. Officer Johnson testified he had been a patrolman in the city of Brockton for almost eight years. In his report Officer Johnson stated he was travelling west on Pleasant Street when he observed a "white vehicle come from Oakdale Ave onto Pleasant Street failing to stop for the stop sign". During the state suppression hearing it was established that Oakdale Avenue while in the same vicinity does not intersect with Pleasant Street. In his testimony at the state

suppression hearing Officer Johnson stated that the report was actually incorrect. He actually observed the white vehicle on Oakland Street when it failed to stop for a stop sign coming onto Pleasant Street. Officer Johnson believed he was approximately 100 to 200 feet from the intersection of Oakland and Pleasant Street at the time he first observed the white vehicle. During direct examination Officer was shown a photograph (Exhibit 4) of Pleasant Street looking west at Oakland. Officer Johnson was asked if there was a Stop sign depicted in the photo. Officer Johnson responded, "There's supposed to be a Stop sign. If there's no Stop sign then its marked on the ground with a solid white line and a word that says, Stop".

On cross-examination, Officer Johnson was again asked if there was a Stop sign at the intersection of Oakland and Pleasant Street. He responded, "There is either a stop sign or its written on the ground with a solid white line. "Right now, I'm not positive [whether it was a Stop sign] or whether it was written on the ground." Question: "That night do you recall what it was?" Answer: "It's one of the two". Question: "But you don't recall which one specifically?" Answer: "No".

The Defendant's investigator Mark William Chaupette also testified at the state suppression hearing. Mr. Chaupette testified that he was a licensed private investigator. On direct examination he was asked to describe the intersection of Pleasant and Oakland Streets. "It just intersects. There is no stop sign at the end of the road." Question "Do you recall if there are any white lines?" Answer: "I didn't observe any white lines, no."

According to Officer Johnson's report the suspect "white vehicle" after turning right on Pleasant Street proceeded to take the next left onto Nye Avenue. Officer Johnson turned left onto Spring Street in an attempt to catch up to the vehicle. Officer

---

[1] The Defendant's attorney has listened the State Court's tape of the Motion To Suppress Hearing

Johnson did not follow the vehicle on Pleasant Street. Officer Johnson's report states that Spring Street intersects with Nye Ave. While Officer Johnson was heading west on Spring street the white vehicle approached from the direction of Nye Ave. Officer Johnson turned the cruiser so as to follow the white vehicle. The vehicle turned onto Newbury Street. On cross-examination during the state suppression hearing Officer Johnson stated that he first became aware of the vehicle's license plate for the first time on Newbury Street. He testified the vehicle was too far away on Pleasant Street to make out the registration, the make and model of the vehicle or the number of occupants. Officer Johnson also testified that Nye Ave was intersected by two other streets and at no time did he observe the vehicle on Nye Ave.

The vehicle was eventually stopped by Officer Johnson at the intersection of Newbury and Highland Streets. While the vehicle was coming to a stop Officer Johnson allegedly observed the back seat passenger later identified as the Defendant Jerel Leslie lean his body to the left almost to the point of being out of sight as "if to retrieve or conceal something". When Officer Johnson arrived at the passenger side of the vehicle the Defendant was sitting up straight with his ID in his hand. While Officer Johnson was conversing with the driver he heard his partner, Officer Baker conversing with the Defendant in the back seat, stating, "Oh, You've done this before." The Defendant stated, "Yeah". Officer Johnson testified that he then shined his flashlight on the driver's side rear passenger floor and noticed the butt and trigger guard of what appeared to be a firearm. The Officers then secured the car's driver, the Defendant, and the vehicle's third passenger.

Once all three parties were secure Officer Johnson walked to the driver side of the vehicle and opened the rear passenger door. He shined his light on the floor and saw a revolver under the driver's seat. While Officer Johnson was searching the vehicle, Officer Baker recovered a gun from the vehicle's third occupant. The gun was recovered from the third occupant's back pocket. After the guns were seized and secured, Officer Johnson's reports states that Sergeant Williamson who had arrived on the scene "gave Miranda warnings to all three parties.

The female driver of the vehicle was released and issued a citation for a Stop sign violation. The Defendant and third occupant were detained and transported to the Brockton Police Station. Upon arrival at the police station the Defendant was initially handcuffed to a railing in the garage.

While in the garage Officer Johnson's report alleges that the Defendant was observed on a surveillance camera pulling something out of his pocket and throwing it in a trash barrel. A shell casing was recovered from the trash barrel. When the shell casing was compared to the other rounds in the guns it was found to be compatible.

## II. Argument

**a. Officer Johnson Did Not Have a Reasonable Suspicion of Criminal Activity Which Would Justify an Investigatory Stop of the Vehicle.**

"Warrantless investigatory stops are allowable if, and to the extent that, police officers have a reasonable suspicion of wrongdoing - a suspicion that finds expression in specific, articulable reasons for believing that a person may be connected to the commission of a particular crime," *United States v. Lee*, 317 F.3d 26, 31 (1st Cir. 2003) (citing *Terry v. Ohio*, 392 US 1, 21 (1968)). In the present case Officer Johnson

4

did not have any reason to believe that the Defendant (or any occupant of the vehicle) had committed, was committing, or was about to commit a crime. Both Officer Johnson's report and testimony failed to set forth any articulable facts to support a finding that Officer Johnson had the slightest scintilla of reasonable suspicion that a crime had been committed. Upon Officer Johnson's first encounter with the Defendant, Officer Johnson was unaware Defendant was even present in the motor vehicle. (On cross-examination in the state suppression hearing Officer Johnson testified that the Vehicle was too far away on Pleasant Street to make out the number of occupants.) Officer Johnson was not responding to any call in the area and was not responding to any wanted vehicle description. Rather than follow the vehicle or activate his blue lights Officer Johnson decided to let the vehicle proceed onto Nye Street where the vehicle would have two additional outlets to avoid Officer Johnson who had proceeded down Spring Street. When Officer Johnson encounters the vehicle on Spring Street he does not state that the vehicle made any evasive maneuvers or tried to avoid contact or failed to stop for Police. Officer Johnson does not assert that the vehicle or its occupants were acting suspiciously in an unusual location or a high crime area.

Further, Officer Johnson offers no evidence that the Defendant in this matter was engaged in any inappropriate activity. Both during his testimony and in his report Officer Johnson stated that the Defendant leaned to his left in a horizontal position almost out of sight immediately prior to the stop as if to "retrieve or conceal something". After exiting his vehicle Officer Johnson observed the Defendant in the back seat with his license in his hand. The Defendant had been "retrieving" his license from his back pocket

immediately prior to the stop. A fact confirmed by Officer Baker who upon seeing the license stated, "You've done this before".

The sole specific and articulable fact on which Officer Johnson relied was the supposed traffic violation of the failure to stop at the intersection of Oakland and Spring Streets. As set forth above there was no Stop sign and relying solely on this mistake of fact is not reasonable. "The officer making the stop must be able to articulate something more than an inchoate and unparticularized suspicion or "hunch" linking an individual to criminal activity," *United States v. Woodrum*, 202 F.3d 1, 7-8 (1st Cir. 2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Consequently, the proper focus for evaluating the sufficiency of evidence of reasonable suspicion centers upon the objective significance of the particular facts under all the circumstances," *Id* at 8. In the present case the "objective significance" of the sole fact of an alleged traffic violation, where no violation occurred under any circumstances is not sufficient to warrant the stop and searching of the vehicle and the Defendant. (See *United States v. Robles*, 253 F. Supp. 2d 544, Police claimed the Defendant made a "fast left" at an intersection in violation of New York law. The Court found that the defendant did not in fact commit a traffic violation for a number of reasons including: "the stop for a fast left would have occurred closer to the intersection-not approximately 200 yards down the block," *Id* at 549. Like *Robles* had the vehicle in which the Defendant was a passenger in fact run a Stop sign the vehicle would have been pulled over closer to the intersection of Pleasant and Oakland Streets not a number of blocks away. "The sole justification proffered by the government for [the defendant's] seizure is the alleged traffic violation which did not occur. Because the government has articulated no other basis for the officers to believe a

6

crime had been or was being committed in their presence, the seizure of the defendant was unlawful. Any evidence that was uncovered as a result of the unlawful seizure, i.e. during the initial search of the vehicle must be suppressed," *Id* at 551 citing *Wong Sun v. United States, 371 U.S. 471, 491-92*.)

"As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred," *Whren v. United States, I* 517 U.S. 806, 810. "A traffic stop is permissible as long as a reasonable officer in the same circumstances *could* have stopped the car for the suspected traffic violation," *Id* at 809.

In the present case the Officer did not witness the vehicle in which the Defendant was riding commit a traffic violation. That is the Officer riding on Pleasant Street was too far from the vehicle to obtain the make or model of the car, the registration number or the exact street from which the vehicle entered. (The officer cited Oakdale in his report when in reality the vehicle approached from *Oakland* Street.) As such the officer was too far to determine if the intersection was marked with a Stop sign (as indicated by the fact that there was no "stop sign"). The officer decided to turn off Pleasant Street before crossing the intersection where the vehicle entered. Had the officer done so he would have realized that there is no stop sign and the intersection is not marked so as to require approaching vehicles to stop. Thereby a reasonable officer, one who could not see a Stop sign or confirm that the intersection was marked with a Stop sign *could not* have stopped the vehicle for any suspected traffic violation which involved a failure to stop.

"So long as officers have probable cause to believe a traffic violation has occurred, it is reasonable for them to stop an automobile and temporarily detain the

7

driver," *U.S. v. Bizier*, 111 F. 3d 214, 217 (1st Cir. 1997).  Officer Johnson had been a patrolman in the City of Brockton for eight years.  Based on that experience it is reasonable to infer that Officer Johnson was aware that there was no stop sign at the intersection of Oakland and Pleasant Streets.  In the alternative if Officer Johnson was unfamiliar with the intersection of Oakland and Pleasant he could have confirmed the existence (or in this case the absence) of a Stop sign by following the suspect vehicle past the intersection in question.  Either way he would not have obtained probable cause to believe a traffic violation has occurred.  To the contrary he would have determined that no traffic violation had occurred.

  In *United States v. Sugar and Stark*, 322 F. Supp. 2d 85(D. Mass 2004) the defendants were stopped while driving in a motor home for an alleged traffic violation.  During a subsequent search of the vehicle drugs were recovered.  The Court found that no traffic violation had in fact occurred. "Accordingly, the initial stop was not reasonable or justified by probable cause . . .," *Id* at

  "The threshold issue [in a motion to suppress] is the standard for evaluating the legality of the stop.  Whether the traffic stop is justified by reasonable suspicion under *Terry* or probable cause to believe a traffic violation has occurred under *Whren* the touchstone is reasonableness," *United States v. Rowell*, 2004 U.S. Dist LEXIS 4412 (D. Mass. 2004).  Officer Johnson had no more than a mere hunch and no justification to initiate a stop.  Officer Johnson's actions were not reasonable under either *Terry* or *Whren*.  Thereby the Defendant was denied his rights under the Fourth Amendment of the United States Constitution and all of the evidence obtained as a result of the stop should be suppressed.  "The police officer's assessment of the facts was both wrong and

unreasonable . . . . This unreasonable mistake of fact violates the Fourth Amendment," *Id* at 11.

    **b. All the Evidence in Issue is Traceable to the Exploitation of the Primary Illegality; the Evidence Must Be Suppressed as Fruit of the Poisonous Tree.**

All of the evidence in the case at bar stems from the illegal stop of the motor vehicle in which the Defendant was a passenger. As set forth above the vehicle was stopped because the police officer unreasonably assumed the vehicle had run a stop sign.

Had the officer not illegally stopped the motor vehicle in which the Defendant was a passenger, the officer would not have had the opportunity to search the vehicle. Without the search no evidence would have been seized. All of the evidence, the gun and the shell casing, are traceable to the exploitation of the primary illegality, the unlawful detention of the Defendant, so that it must be suppressed as fruit of the poisonous tree. "Because the stop of the car is held unlawful, the [evidence] should be suppressed as the fruit of the poisonous tree," *Sugar and Spark*, at 92 citing *United States v. Rowell*, 2004 U.S. Dist. LEXIS 4412, 2004 (D. Mass. 2004); see also *Wong Sun v. United States*, 371 U.S. 471. 487-88 (S. Ct. 1963) (holding that evidence that would not have been obtained but for an unlawful search must be excluded as "fruit of the poisonous tree").

### III. CONCLUSION

In the present case, there was no basis for even an investigatory stop. The stop was solely based on an unreasonable assumption that the vehicle in which the Defendant was a passenger committed a traffic violation. It has been established under *Terry* and *Whren* that this alone is an insufficient basis for a stop. Because all the evidence is

traceable to the exploitation of that primary illegality, it must be suppressed as fruit of the poisonous tree.

For the foregoing reasons, this Court should allow the Defendant's motion and suppress both all of the Defendant's statements as well as any physical evidence.

|  |  |
|---|---|
|  | **JEREL LESLIE**<br>By his attorney, |
|  | /s/ *Albert F. Cullen, Jr.*<br>BBO# 107900<br>60 K Street<br>Boston, MA 02127 |
| Dated: September 21, 2005 | (617) 268-2240 |

I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

/s/ ***Albert F. Cullen, Jr.***
Albert F. Cullen, Jr.

```
!----------------------------!                                  !---------------------!
! Offense/Incident           !                                  ! Case No.            !
!                            ! BROCKTON POLICE DEPARTMENT       !                     !
! UNL POSS FIREARM           !      ARREST REPORT               !    04016033         !
!----------------------------!----------------------------------!---------------------!
! Offense Date and Time    ! Day ! Arrest Date and Time   ! Day ! Domestic Violence?  !
! 12/18/2004    03:21      ! Sat ! 12/18/2004    03:21    ! Sat !        NO           !
!--------------------------------------------------------------------------------------!
! Location of Offense            ! Apt ! Sector ! Wrd ! Prec ! Arresting Officer      !
! HIGHLAND ST &NEWBURY ST        !     !   CC   !  2  !  2B  ! JOHNSON, STEVEN E      !
!--------------------------------------------------------------------------------------!
! Defendant's Name                   ! Sex ! Race ! Hgt ! Wgt ! D.O.B.     !   A/J    !
! LESLIE         JEREL           A   !  M  !  B   ! 6FT ! 180 ! 01/02/1982 !  ADULT   !
!--------------------------------------------------------------------------------------!
! Defendant's Address                              ! Social Security No.              !
! 10/TRIPP ST   #2 BROCKTON MA                     !      026622008                   !
!--------------------------------------------------------------------------------------!
! Offense(s) Charged    A !                       B !                              C  !
! UNL POSS FIREARM        ! UNL POSS AMMUNITIO      ! WARRANT ARREST                  !
!--------------------------------------------------------------------------------------!
! Weapon(s) Used               ! Location of Arrest                                   !
!                              ! HIGHLAND ST &NEWBURY ST                              !
!--------------------------------------------------------------------------------------!
! Co-Defendant                 ! Address                         ! D.O.B.             !
! TOUSSAINT      RALPH     E   ! 70/HILLBERG AV BROCKTON MA      ! 09/27/1977         !
!--------------------------------------------------------------------------------------!
! Victim 1                           ! Sex ! Race ! D.O.B       !                     !
! SOCIETY                            !     !      !             !                     !
!--------------------------------------------------------------------------------------!
! Residence Address                              ! Res Telephone ! Bus Telephone     !
!                                                !               !                   !
!--------------------------------------------------------------------------------------!
! Type of Property  ! Make     ! Model         ! Color 1 ! Color 2 ! Value            !
! FIREARMS/ACCESSORI ! RUGER   ! .357 MAG      !  BLK    !  BRO    ! $                !
!--------------------------------------------------------------------------------------!
! Type of Property  ! Make     ! Model         ! Color 1 ! Color 2 ! Value            !
! FIREARMS/ACCESSORI ! S&W     ! .38 SPL       !  SIL    !  BRO    ! $                !
!--------------------------------------------------------------------------------------!
! Witness 1                          ! Sex ! Race ! D.O.B       !                     !
! JOHNSON        STEVEN              !  M  !  W   !             !                     !
!--------------------------------------------------------------------------------------!
! Residence Address                              ! Res Telephone ! Bus Telephone     !
! 7/COMMERCIAL ST BROCKTON MA                    !               !                   !
!--------------------------------------------------------------------------------------!
! Witness 2                          ! Sex ! Race ! D.O.B       !                     !
! BAKER          SHAWN               !  M  !  W   !             !                     !
!--------------------------------------------------------------------------------------!
! Residence Address                              ! Res Telephone ! Bus Telephone     !
! 7/COMMERCIAL ST BROCKTON MA                    !               !                   !
!--------------------------------------------------------------------------------------!
! Witness 3                          ! Sex ! Race ! D.O.B       !                     !
! KIRBY          OFC BRIAN           !  M  !  W   !             !                     !
!--------------------------------------------------------------------------------------!
! Residence Address                              ! Res Telephone ! Bus Telephone     !
! 7/COMMERCIAL ST BROCKTON MA                    !               !                   !
!--------------------------------------------------------------------------------------!
! Witness 4                          ! Sex ! Race ! D.O.B       !                     !
! GAUCHER        OFC RICHARD         !  M  !  W   !             !                     !
!--------------------------------------------------------------------------------------!
! Residence Address                              ! Res Telephone ! Bus Telephone     !
```

| Offense/Incident | | | | Case No. |
|---|---|---|---|---|
| NL POSS FIREARM | BROCKTON POLICE DEPARTMENT | | | 04016033 |
| | ARREST REPORT | | | |

| Witness 5 WILLIAMSON SGT STEVE | Sex M | Race W | D.O.B | |
|---|---|---|---|---|
| Residence Address 7/COMMERCIAL ST BROCKTON MA | | Res Telephone | | Bus Telephone |

| Witness 6 PIZZI OFC JOE | Sex M | Race W | D.O.B | |
|---|---|---|---|---|
| Residence Address 7/COMMERCIAL ST BROCKTON MA | | Res Telephone | | Bus Telephone |

| Witness 7 FERNANDES KRISTIN | Sex F | Race B | D.O.B 05/30/1983 | |
|---|---|---|---|---|
| Residence Address 12/LEAHY RD BROCKTON MA | | Res Telephone | | Bus Telephone |

| State & Reg. | Year | Make | Model | Color | Vehicle ID Number | Status |
|---|---|---|---|---|---|---|
| MA 56GB21 | 03 | NISS | MAX | WHI | | |

Narrative:

1. ON THE ABOVE DATE AND TIME WHILE WORKING OVERTIME (IMPACT SHIFT),
2. OFC BAKER AND MYSELF (OFC JOHNSON) WERE ON PLEASANT ST HEADING WEST,
3. WE OBSERVED A WHITE MOTOR VEHICLE COME FROM OAKDALE AVE ONTO PLEASANT
4. ST FAILING TO STOP FOR THE STOP SIGN. THE VEH TURNED RIGHT ONTO
5. PLEASANT ST AND THEN LEFT ONTO NYE AVE.
6. WHEN I OBSERVED THE VEH DO THIS I TURNED ONTO SPRING ST. KNOWING
7. THAT NYE AVE COMES OUT TO SPRING ST I HEADED WEST TO TRY TO FIND THE
8. VEHICLE. WHILE WE WERE ON SPRING ST HEADING WEST A WHITE VEHICLE WAS
9. COMING TOWARD US FROM THE DIRECTION OF NYE AVE. I STOPPED THE CRUISER
10. AND WAITED FOR THE VEH TO PASS BYE US. WITH NO OTHER VEH'S ON THE
11. ROAD AND IN THE AREA, I TURNED TO GET BEHIND THE VEH. WITH THE VEH NOW
12. HEADING SOUTH ON NEWBURY ST, I PROCEEDED TO PUT MY OVERHEAD BLUE
13. LIGHTS ON TO STOP THE VEH. THE VEH MA REG# 56GB21 A WHITE NISSAN
14. MAXIMA CAME TO A STOP AT THE INTERSECTION OF NEWBURY ST AND HIGHLAND
15. ST.
16. WHILE THE VEH WAS COMING TO A STOP AT THAT INTERSECTION, I (OFC
17. JOHNSON) OBSERVED THE BACK SEAT RIGHT PASSENGER LEAN HIS BODY LEFT TO
18. A HORIZONTAL POSITION AS IF TO RETRIEVE OR CONCEAL SOMETHING ALMOST
19. TO A POINT OF BEING OUT OF MY SIGHT,"TOWARD THE LEFT OF THE VEH".
20. I WALKED UP TO THE DRIVERS SIDE OF THE VEH AND OFC BAKER WALKED UP
21. THE PASSENGERS SIDE OF THE VEH. WHEN I APPROACHED THE VEH THE BACK
22. SEAT PASSENGER WAS NOW SITTING UP STRAIGHT WITH HIS ID IN HAND.
23. AT THIS TIME I ASKED THE DRIVER FOR HER LICENSE AND REGISTRATION.
24. SHE STATED THAT SHE HAD HER LICENSE BUT NO REGISTRATION. WHILE I WAS
25. TALKING TO THE DRIVER, OFC BAKER WAS CONVERSING WITH THE PASSENGER IN
26. THE REAR SEAT, STATING "OH, YOU'VE DONE THIS BEFORE". THE DEF. STATED
27. "YEAH". WITH MY FLASHLIGHT OUT WATCHING THE PARTIES IN THE VEH, I
28. SHINED MY FLASHLIGHT ON THE DRIVERS SIDE REAR PASSENGERS FLOOR AND

| Offense/Incident | | Case No. |
|---|---|---|
| NL POSS FIREARM | BROCKTON POLICE DEPARTMENT ARREST REPORT | 04016033 |

```
29 ! NOTICED THE BUTT AND TRIGGER GUARD OF WHAT APPEARED TO BE A FIREARM
30 !    AT THAT TIME I SIGNALED TO OFC BAKER WHO WAS ON THE OPPOSITE SIDE OF
31 ! THE VEH, BY HOLDING UP FOUR FINGERS, AND THEN IMMEDIATELY CALLED FOR
32 ! BACK UP.
33 !    WHILE WAITING FOR BACK UP OFC BAKER WAS CONVERSING WITH BOTH THE
34 ! FRONT PASSENGER AND THE REAR PASSENGER TRYING NOT TO ALARM ANYONE IN
35 ! THE VEH.
36 !    FIRST ON SCENE WAS DET. DELEHOY.  HE WALKED UP TO ME, I TOLD HIM THE
37 ! SITUATION.  WITH GUNS DRAWN, DET DELEHOY COVERED ME FROM THE DRIVERS
38 ! SIDE OF THE VEH, I WALKED AROUND TO THE PASSENGERS SIDE OF CAR TO
39 ! ASSIST OFC BAKER IN GETTING THE PARTIES FROM THE VEH.
40 !    WITH DET DELEHOY COVERING THE PARTIES FROM THE DRIVERS SIDE AND OFC
41 ! BAKER COVERING FROM THE PASSENGERS SIDE GUNS DRAWN,I TOLD THE REAR
42 ! SEAT PASSENGER THAT I WAS GOING TO OPEN THE DOOR. I TOLD HIM THAT I
43 ! WANTED HIM TO GO DIRECTLY TO THE GROUND. I GUIDED, SUPPORTED AND DIR-
44 ! ECTED THE DEF FROM THE VEH BY THE ARM TO THE CURB AND PLACED HIM IN
45 ! HANDCUFFS.
46 !    WHEN I WAS DONE SECURING MY DEF.,  OFC BAKER WITH THE ASSIST OF OFC
47 ! KIRBY AND OFC GAUCHER TOOK THE FRONT SEAT PASSENGER FROM THE VEH.
48 ! HE WAS GUIDED, SUPPORTED AND DIRECTED TO THE CURB ALSO.  AFTER THE TWO
49 ! PASSENGERS WERE SECURE THE FEMALE WAS TAKEN FROM THE VEH BY DET
50 ! DELEHOY.  SHE WAS PLACED IN HANDCUFFS AND BROUGHT AROUND TO THE
51 ! PASSENGERS SIDE OF THE VEH.
52 !    WITH ALL THREE PARTIES SECURED I WALKED TO THE DRIVER SIDE OF THE
53 ! VEH AND OPENED THE REAR PASSENGERS DOOR.  I SHINED MY LIGHT ON THE
54 ! FLOOR AND SAW A REVOLVER UNDER THE DRIVER SEAT.  THE HANDLE WAS
55 ! CLOSEST TO THE DEF IN THE BACK SEAT AND THE BARRELL WAS POINTING AWAY
56 ! FROM HIM.  OFC KIRBY HAD THE FRONT SEAT PASSENGER ON THE GROUND AND
57 ! BEGAN TO DO A PATFRISK.  WHILE OFC KIRBY HAD THE SUSPECT ON THE GROUND
58 ! THE DEF STATED, I HAVE A GUN IN MY BACK POCKET".  AT THAT TIME
59 ! KIRBY FOUND THE GUN AND TOOK IT FROM THE DEF'S RIGHT REAR POCKET. HE
60 ! HANDED THE GUN TO OFC GAUCHER WHO WAS ASSISTING HIM.  OFC GAUCHER
61 ! MADE THE SILVER REVOLVER SAFE BY EMPTYING THE ROUND OUT OF THE
62 ! CYLINDERS. OFC GAUCHER NOTICED WHEN HE WAS MAKING THE GUN SAFE THERE
63 ! WAS A ROUND MISSING FROM ONE OF THE CYLINDERS, MEANING THE GUN HOLDS
64 ! FIVE ROUNDS BUT THERE WAS ONLY FOUR ROUNDS IN THE GUN.  THE GUN WAS
65 ! THEN PLACED IN MY CRUISER.
66 !    WHILE ON SCENE I TOOK PICTURES OF THE GUN IN THE VEH AND ALSO
67 ! PICTURES OF THE VEH IN QUESTION.  AFTER TAKING PICTURES AND SECURING
68 ! THE DEF IN CRUISERS, DET DELEHOY TOOK THE GUN THAT WAS UNDER THE
69 ! DRIVERS SEAT AND MADE IT SAFE.  HE OPENED THE CYLINDER AND BEGAN TO
70 ! TAKE THE ROUNDS OUT.  HE ALSO NOTICED THAT THERE WAS ONE ROUND MISSING
71 ! FROM THE CYLINDER IN THAT GUN.  AFTER MAKING THE GUN SAFE IT WAS ALSO
72 ! PLACED IN MY CRUISER.
73 !    SGT WILLIAMSON WHO WAS ALSO ON SCENE ASSISTING GAVE MIRANDA WARNINGS
74 ! TO ALL THREE OF THE PARTIES.  THE DRIVER OF THE VEH WAS ASKED IF SHE
75 ! UNDERSTOOD HER RIGHTS AND SHE STATED YES.  SHE WAS THEN ASKED BY OFC
76 ! BAKER WHERE SHE WAS COMING FROM?  SHE STATED THAT SHE WAS COMING FROM
77 ! HER HOUSE. SHE ALSO STATED THAT SHE WAS GIVING THEM A RIDE HOME IN
78 ! EXCHANGE OF THEM BUYING HER GAS FOR HER CAR.  SHE WAS THEN ASKED IF
79 ! SHE KNEW THEY HAD GUNS?  SHE STATED,  NO I WOULD NOT LET THEM IN MY
```

| Offense/Incident | | Case No. |
|---|---|---|
| NL POSS FIREARM | BROCKTON POLICE DEPARTMENT<br>ARREST REPORT | 04016033 |

```
 80 ! HOUSE AROUND MY SON IF I KNEW THEY HAD GUNS".  SHE ALSO STATED THAT
 81 ! SHE WAS GRADUATING FROM COLLEGE SOON AND SHE WORKED AS AND INTERN AT
 82 ! THE COURT HOUSE IN THE PROBATION DEPARTMENT.  SHE STATED THAT SHE
 83 ! DOES NOT DEAL WITH GUNS.  AFTER CONVERSING OFC BAKER AND I BELIEVED
 84 ! THAT THE FEMALE HD NO KNOWLEDGE OFF THE GUNS IN HER VEH.
 85 ! SHE WAS TOLD TO WAIT IN HER VEH WHILE SHE WAS ISSUED A CITATION FOR
 86 ! THE STOP SIGN VIOLATION.  SHE WAS THEN SENT ON HER WAY.
 87 !   THE DEF'S WERE TRANSPORTED TO THE STATION.
 88 !   WHILE IN THE GARAGE AWAITING BOOKING, OFC PIZZI WHO WAS WORKING
 89 ! DISPATCH MONITORING THE GARAGE CAMERAS NOTICED MR LESLIE REACH INTO
 90 ! HIS POCKET AND PULL SOMETHING OUT.  HE ALSO NOTICED THAT HE WAS
 91 ! UNCOMFORTABLY STRAINING TO THROW SOMETHING IN THE TRASH BARRELL.  OFC
 92 ! PIZZI ALSO NOTICED THAT HE WAS WAITING FOR THE OFFICERS TO TURN THEIR
 93 ! BACKS TO TRHOW IT AWAY.  HE THEN SAW THE DEF THROW SOMETHING IN THE
 94 ! BARRELL.  OFC PIZZI CALLED UP TO BOOKING FROM DISPATCH AND TALKED TO
 95 ! OFC BARUDE.  HE TOLD HIM WHAT THE DEF DID BY THROWING SOMETHING IN THE
 96 ! BARRELL.  OFC BARUDE WENT TO THE TRASH BARRELL AND LOOKED INSIDE.
 97 ! HE IMMEDIATELY SAW A SHELL CASING SITTING ON TOP OF THE TRASH IN THE
 98 ! BARRELL.  OFC GAUCHER GOT A PLASTIC BAGGY AND PICKED THE CASING FROM
 99 ! THE TRASH,   THE CASING WAS COMPARED TO THE OTHER ROUNDS IN THE GUNS.
100 ! THE CASING IN QUESTION WAS AN EMPTY WINCHESTER .357 CASING.  NEXT TO
101 ! THE EMPTY CHAMBER IN THE CYLINDER WAS A LIVE WINCHESTER .357 ROUND
102 ! WITH THE SAME CASING. MR LESLIE STATED TO OFC GAUCHER AS HE RETRIEVED
103 ! THE SHELL CASINS "I FOUND THE CASING IN THE TRASH AND PUT IT IN MY
104 ! POCKET AND JUST WANTED TO THROW IT AWAY.
105 !   BOTH DEF'S WERE BOOKED AND PLACED IN A CELL TO AWAIT BAIL. THEY WERE
106 ! ALSO BOTH CHECKED FOR LICENSE TO CARRY A FIREARM BUT NONE WAS FOUND ON
107 ! EITHER DEF.  BOTH FIREARMS WERE RUN AND CHECKED THROUGH NCIC BUT
108 ! NOTHING CAME BACK AT THIS TIME.
109 !
110 !                       "SUPPLEMENT REPORT"
111 !
112 !   AFTER FURTHER INVESTIGATION I OFC JOHNSON WANTED TO INDICATE
113 ! (MR LESLIE) DEF#1 WAS LOCATED IN THE REAR RIGHT SIDE PASSENGERS
114 ! SEAT.  DEF#2 (MR TOUSSAINT) WAS LOCATED IN THE FRONT RIGHT PASSENGERS
115 ! SEAT.
116 !
117 !
118 !
119 !
120 !
```

Signed under the pains & penalties of perjury. (Arresting Officer Signature)

Report Date    ! Supervisors Signature

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | CR. No. 05-10052-RCL |
| | ) | |
| v. | ) | **DEFENDANT'S AFFIDAVIT** |
| | ) | **IN SUPPORT OF MOTION** |
| JEREL LESLIE | ) | **TO SUPPRESS EVIDENCE** |
| | ) | |
| Defendant | ) | |
| | ) | |

I, JEREL LESLIE, under oath do hereby depose and state as follows:

1. I am the Defendant in the above referenced matter and I submit this Affidavit in support of my motion to suppress all evidence obtained in this matter. The evidence was obtained as a result of the stop on December 18, 2004 of the motor vehicle in which I was a passenger. The police officer's informed the operator of the motor vehicle that she was stopped for failing to stop at a stop sign at the intersection of Oakldale and Pleasant Streets. Oakdale does not intersect with Pleasant Street. I am not aware of any stop sign at the intersection of Oakland and Pleasant Streets.

2. The evidence I am seeking to suppress includes but is not limited to any and all tangible evidence obtained in connection with this matter and any and all statements made by me. All of this evidence was obtained in violation of my Constitutional Rights.

3. I was arrested on December 18, 2004. I was later indicted by a grand jury for violation of 18 U.S.C. Sec. 922(g)(1) - Possession of a Firearm and Ammunition by a Felon.

4. At the time of the stop and search when I was arrested there existed no reasonable suspicion or probable cause to believe that I was committing a crime, was about to commit a crime, or had just committed a crime.

5. I was wrongfully approached, stopped, and searched by the officers.

6. I have been aggrieved by this unlawful arrest, search and seizure which violated my Constitutional Rights and I have grounds to believe that all the evidence obtained through this unlawful arrest, search and seizure will be used against me in this prosecution.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 9TH DAY OF SEPTEMBER, 2005.

*/s/ Jerel Leslie*
JEREL LESLIE