UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff | ) | CR. No. 05-10052-RCL | |
| | ) | | |
| v. | ) | | |
| | ) | | |
| | | ) | |
| JEREL LESLIE | ) | | |
| | ) | | |
| Defendant | ) | | |
| | ) | | |

**DEFENDANT'S  REPLY TO GOVERNMENT'S RESPONSE
TO DEFENDANT'S  MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**

The Defendant, by and through his undersigned attorney, hereby submits this reply to the Government's Memorandum in Opposition to Defendant's Motion To Suppress Evidence and Statements.  The Government's Memorandum misrepresents the scene and conditions of the arrest, contradicts the facts previously testified to under oath by the Brockton Police, relies on case law clearly distinguishable from the present case and offers erroneously titled state court findings which have no relevance to this matter.

**I.  Government's Statement Of Relevant Facts**

The Government in its Response concedes there was no "stop sign" or "painted" stop sign on the road as previously testified to by the arresting officer.  (See Paragraph 4 of Exhibit 1, Affidavit of Sheila M. O'Hara, "There was no stop sign or stop line at the intersection . . . ." "Nor is there any "painted" stop sign on the street surface of the intersection,"  (*Gov't Resp. N3 P.2)* )  While conceding there is no stop sign or stop line at the intersection the Government's Response nonetheless confuses the facts of the stop, "Having so investigated, it is now clear to the government that no "stop sign" is currently in place *at the intersection where the vehicle in which the defendant was riding as a passenger was stopped by the police* (emphasis added).  The arresting officer in both his police report and his previous state court testimony asserts that he observed the vehicle commit an infraction by failing to stop at the intersection.  There is no evidence that the

vehicle was "stopped by police" at the intersection. All of the evidence is that the vehicle was later stopped on Newbury Street.

In Note 4 of its brief the Government states, "The government anticipates that the testimony given by police officers at the evidentiary hearing will support the facts asserted herein." If that is the case the police officers testimony at the evidentiary hearing will be in direct conflict with the physical evidence and prior sworn testimony.

"On December 18, 2004, two Brockton Police Officers observed a white motor vehicle fail to stop at an intersection where the officers believed there was a stop sign (at the intersection of Pleasant and Oakdale Avenue)" (*Gov't Resp. P.2*).  Oakdale Avenue and Pleasant Street do not intersect, (see Affidavit of Sheila M. O'Hara, Paragraph 3, "Oakdale Avenue stops at the intersection of Colonial Terrace and Baxendale Terrace and does not actually intersect with Pleasant Street.") OFC Johnson also testified at the state hearing that Oakdale Avenue and Pleasant Street do not intersect.

"Officers followed the car as it turned right onto Pleasant Street and then left onto Nye Avenue. As the white vehicle turned to head south on Newbury street, the officers activated the overhead blue lights on the marked cruiser to effect a stop of the white motor vehicle, which they then pulled over," (*Gov't Resp. P. 2.*) This assertion is in direct contradiction to the arresting officer Johnson's December 18, 2004 Arrest Report and his sworn testimony at the March 16, 2005 District Court hearing.

"On the above date and time while working overtime, OFC Baker and myself (OFC Johnson) were on Pleasant Street heading west, we observed a white motor vehicle come from Oakdale Ave onto Pleasant Street failing to stop for the stop sign. The vehicle turned right onto Pleasant St and then left onto Nye Ave. *When I observed the vehicle do this I turned onto Spring St. knowing that Nye Ave comes out to Spring St I headed west to try and find the vehicle. While we were on Spring St heading west a white vehicle was coming toward us from the direction of Nye Ave. I stopped the cruiser and waited for the veh to pass bye (sic) us. With no other veh's on the road and in the area, I turned to get behind the veh. With the veh now heading South on Newbury St, I proceeded to put my overhead blue lights on to stop the veh. The veh came to a stop at the intersection of Newbury St. and Highland St.* (emphasis added)," (Officer Johnsosn's December 18, 2004 Arrest Report). Officer Johnson's District Court testimony corroborated his arrest report. The Government's assertion of these facts is not supported

by the present record in the case.

"Prior to exiting the police cruiser, one officer clearly observed the back seat passenger lean his body from the right side where he was sitting to the left as if to retrieve or conceal something," (*Gov't Resp. P. 2.).* "While the vehicle was coming to a stop at that intersection I (OFC Johnson) observed the passenger lean his body left to a horizontal position as if to retrieve or conceal something. When I approached the veh the back seat passenger was now sitting up straight with his ID in hand," (OFC Johnson December 18, 2004 Arrest Report). At the time it appears from the report that OFC Johnson believed the Defendant had retrieved his ID. Although the Government now contends, "the barrel of the gun was pointing in the direction opposite where the rear passenger had been sitting (consistent with placing the weapon at such location during his prior leaning motion), (*Gov't Resp. P. 3*). This conclusion is inconsistent with both the arrest report and Officer Johnson's District Court testimony.

## II.    Affidavit Of Sheila M. O'Hara Is Inaccurate And Misrepresents The Conditions At The Time Of The Alleged Traffic Violation

The Government has attached the Affidavit of ATF Special Agent Sheila O'Hara in support of its opposition. Her affidavit is inaccurate and misrepresents the surrounding area where the vehicle in which the Defendant was traveling allegedly committed a traffic infraction. Paragraph 6. of the Affidavit states, "I drove around the area and observed that almost all the streets that intersected with Pleasant Street had either stop signs, stop lines or both." This statement is inaccurate. Three of the streets that intersect Pleasant in the immediate area of the intersection of Pleasant and Oakland Ave. have no stop signs or stop lines. (The intersections without stop signs or stop lines are Glenwood Street and Pleasant Street, Newbury Street and Pleasant Street, and Oakland and Pleasant Street.)

While heading West on Pleasant Street, as the officers were on the night of the arrest, the two streets prior to Oakland are Glenwood Street and Newbury Street (See Attachment 1 Map of the Area). Neither Glenwood Street or Newbury Street have a stop sign or stop line (see Attachments 2 and 3, respectively). Also the Affidavit apparently concedes there was no stop sign or stop line on Glenwood Street, "The intersection of Glenwood Street and Pleasant Street did not have a stop sign or stop line."

Proceeding West on Pleasant Street the next street intersecting Pleasant is

Oakland Avenue which the Government also concedes has no stop sign or stop line (see Attachment 4). In summary as the officers were proceeding west on Pleasant Street on the night in question the two streets, Glenwood Street and Newbury Street, the officers would have passed after observing the vehicle did not have stop signs or stop lines. Further the intersection of Oakland Avenue and Pleasant did not have a stop sign or a stop line. Therefore Agent O'Hara's Affidavit which states "almost all the streets that intersected with Pleasant had either stop signs, stop lines or both," is inaccurate. The Affidavit is also misleading in that the streets immediately prior to the intersection in question, Oakland Avenue and Pleasant Street, do not have stop signs or stop lines. These are the streets the arresting officers would have passed after first observing the vehicle in which the Defendant was riding.

Also in Paragraph 6 of her Affidavit, Agent O'Hara stated that every vehicle she observed at the intersection of both Oakland Ave and Pleasant Street and Glenwood Street and Pleasant Street came to a complete stop. The vehicles came to a stop despite being required to do so. The Defendant would like to point out to the Court that Agent O'Hara's observations were made at 5:00 PM arguably the busiest time of day for motor vehicle traffic. Obviously if there is oncoming traffic a vehicle will stop regardless of the absence of a stop sign. The incident in question occurred at 3:21 AM when traffic on Pleasant Street would have been non-existent thereby any vehicle entering Pleasant Street could have proceeded onto Pleasant without stopping.

### III.   Police Officers Did Not Have An Objectively Reasonable Basis For The Traffic Stop

The Government asserts, "The vehicle came to an intersection of two streets that would normally involve a stop sign or painted stop line and the automobile's driver neglected to stop," (*Gov't Resp. P. 4.*). The Government offers no authority that the intersection should be marked with a stop sign other then the fact that it is an intersection. Further, the driver cannot "neglect" to stop where no stop is required.

"One of the streets – actually a highway – was known to the police officers to be quite busy with traffic," (*Gov't Resp. P. 4.*) The Government in its brief places great emphasis on the fact one of the streets, Pleasant Street is a "highway". The Government, however cites no authority that Pleasant Street is a "highway". Pleasant Street is not marked as a state highway anywhere in the vicinity of the alleged traffic violation. Both

the Government's and the Defendant's photos demonstrate the street is in a residential section of Brockton. According to the Brockton Police the speed limit, unmarked in the area of the alleged traffic violation is 30 miles per hour. The Government seemingly implies that Pleasant Street is the equivalent of Route 95 with a speed limit of 65 miles per hour thereby requiring any car entering Pleasant Street to yield or stop. That argument is not supported by the facts. Furthermore at the time of the incident, 3:21 AM, there was apparently no traffic. The Arrest Report makes no reference to any traffic and OFC Johnson testified he had a clear view of the vehicle as it entered the intersection even though he was "too far away to make out the registration, the make and model of the vehicle or the number of occupants." Meaning there was no intervening traffic. The Government in essence is arguing that a vehicle entering an empty intersection in the early morning hours in a residential neighborhood should stop despite not being required to do so. This argument simply is not reasonable.

Even assuming that a traffic violation had occurred at the intersection of Oakland Avenue and Pleasant Street the stop of the motor vehicle in which the Defendant was riding would still be unconstitutional. The arresting officer testified at the state hearing that he had no description of the vehicle (other than the color): no make or model, no registration, the number of occupants and the sex of the occupants were all unknown. The officer states in his report that observed the vehicle "turn left onto Nye Ave." However, in his state court testimony he stated that he never actually observed the vehicle on Nye Ave. The officer failed to follow the vehicle, "When I observed the vehicle do this I turned onto Spring Street." Nye Avenue is intersected by two other streets Nye Square and Garden Road (See Attachment 1) . Without any description of the vehicle and other points of entry and exit off of Nye Avenue there is no offering by the Government or any evidence that the vehicle stopped by the Brockton Police was actually the vehicle first observed entering Pleasant Street form Oakland Avenue.

"The officers knew that other streets which similarly intersected the highway in the immediate vicinity were clearly marked with stop signs and/or painted stop lines," (*Gov't Response P. 5.*). It would follow that the Police Officers would also know which streets were not marked with stop signs or painted stop lines. OFC Johnson testified he had been a patrolman in the City of Brockton for eight years. Eight years as a patrolman would provide him with a detailed knowledge of Pleasant Street and its various

intersections.  There are other streets in the immediate area which intersect Pleasant that do not have a stop sign or stop line at the intersection.

Given these undisputed facts it is simply not reasonable as the Government asserts that the officers in this case could reasonably believe that the Defendant's vehicle failure to stop was a violation of the traffic code.

The Government relies on *United States v. Fox,* 393 F.3d 52 (1st Cir. 2004) in support of its argument.  In *Fox* the arresting officer "encountered a vehicle that appeared to be without a working plate light  which he knew to be a violation of Maine law. Although [the officer] *tried* (emphasis added), he was unable to determine whether it had a functioning plate light," *Id* at 59.  In the present case the Officers made no effort to determine whether a traffic violation had occurred.  Upon witnessing the perceived violation the officers could have activated their blue lights and followed the suspect vehicle. In which case the officers would have proceeded through the intersection and observed there was no stop sign or stop line and no violation of any traffic law had occurred.  Arguably the officers in the present not only failed to determine whether a traffic violation had occurred the officers took action so as to avoid determining whether a traffic violation had occurred.  The present case is clearly distinguishable from *Fox*.  "A traffic stop "must be supported by a reasonable and articulable suspicion of criminal activity,"  *Id* at 59, citing *United States v. Chhien*, 266 F.3d 1,6 (1st cir. 2001).  For both the reasons set forth above as well as the reasons set forth in the Defendant's original Memorandum in support of Defendant's Motion To Suppress the officers in the present case did not have any suspicion of criminal activity.  Therefore *Fox* is not applicable to the present case.

The Government argues that the Defendant's reliance on *United States v. Sugar*, 322 F. Supp. 2d 85 (D. Mass 2004) is misplaced.  In *Sugar* the Court found that no traffic violation had in fact occurred.  The Court in Sugar applied the reasonableness test.  There was no allegation by the defendant in Sugar as the Government asserts that it was not a violation of Missouri law to swerve over the fog line.   The *Sugar* Court found that since the alleged violation fell outside the scope of the Missouri statute the stop by the officer was not reasonable.  Likewise since it is not a violation in Massachusetts to proceed through an unmarked intersection without stopping, no traffic violation occurred. Thereby the officers' actions in the present case were unreasonable.   As such the Court's

holding in *Sugar* is squarely on point with the present case.

### IV. The Officer's Observations And Justifications For the Scope of the Investigatory Stop Are Not Relevant Since the Stop Was A Violation of Defendant's Constitutional Rights

The Defendant notes that in all of the cases the Government cites in support of the Government's second (II) argument the initial stop was found to be valid. As set forth in the Defendant's initial Memorandum evidence that is traceable to the exploitation of the primary legality must be suppressed as fruit of the poisonous tree. In the present case since the initial stop was a violation of the Defendant's constitutional rights any evidence obtained should be suppressed.

The Government cites *United States v. Woodrum*, 202 F. 3d 1 (1st Cir 2000), "Slouching, crouching, or any other arguably evasive movement, *when combined with other factors particular to the defendant or his vehicle* (emphasis added) can add up to a reasonable suspicion," *Id* at 7. In the present case the police officers fail to cite a single additional factor other than the Defendant's leaning over. Furthermore, Defendant's actions are explained when arriving at the vehicle the police officers see that the Defendant has his identification in his hand which he apparently retrieved by leaning over and reaching into his back pocket.

*Woodrum* also states, "The officer making the stop must be able to articulate something more than an inchoate and unparticularized suspicion or "hunch" linking an individual to criminal activity," *Id* at 7-8 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "Consequently, the proper focus for evaluating the sufficiency of evidence of reasonable suspicion centers upon the objective significance of the particular facts under all the circumstances," *Id* at 8. In the present case the "objective significance" of the sole fact of an alleged traffic violation, where no violation occurred under any circumstances or the fact that the police officers observed Defendant leaning over to retrieve his identification is not sufficient to warrant the stop and searching of the vehicle and the Defendant.

The Government also cites *Fox* in connection with the Defendant's movements. In *Fox* the Court relied not solely on the defendant's movements but on the fact that the officer recognized the defendant as an individual he had previously arrested for possession of brass knuckles, a concealed firearm and illegal drugs. The officer also

noticed the defendant has a large bulge in the defendants left inside jacket pocket.   As set forth above in the present case the officers made no effort to determine if the Defendant's vehicle had in fact committed a traffic violation as the officer did in *Fox*.  Furthermore, the officers in the present case cannot cite an additional circumstance that would make the search of the Defendant's vehicle reasonable.  They did not recognize the Defendant as was the situation in *Fox*.  The present case is clearly distinguishable from all of the cases the Government cites in support of its argument.

### V.  State District Court Findings As To Party Not Named In This Action Are Not Relevant To The Present Case

"In an effort to further illuminate previous state court findings on the issue, The Supreme Judicial Court's ruling on the Motion to Suppress is attached as "Attachment 2"", (*Gov't Resp. N2. P. 1*).  The Defendant objects to this Attachment on a number of grounds.

The Attachment is improperly represented in the Government's memo.  What is attached is a transcript, "that did not meet professional standards and could not be certified as accurate."  (See Affidavit of Counsel) of the Brockton District Court (and not the Massachusetts Supreme Court as represented) Findings of Fact and Conclusions of Law in connection with a defendant Ralph Toussaint.  Given the transcript can not be verified as accurate the Court's inquiry should end there.

Furthermore, Ralph Toussaint is not a party to this action.  Regardless, the Brockton District Court's Findings of Fact and Conclusions of Law have no authority in this case or this Court.  The Government makes no showing of authority for introducing this mischaracterized attachment.

While apparently a co-defendant in a state case, Mr. Toussaint through his counsel did not argue as the Defendant in the present case that the reasonable, articulable suspicion standard applied.  Finally, the Brockton District Court reached its conclusion based on a state case, "from the Lowell area" that cited a "good faith basis" of the officers.  Neither the case on which the Brockton District Court relied or "the good faith basis" standard carry any authority in this Court.  For these reasons the Defendant requests that the Court disregard the Government's Attachment 2.

### VI. Conclusion

For the both the reasons contained herein as well as the arguments articulated in

the Defendant's Memorandum in Support of His Motion To Suppress the Defendant requests that the Court grant the Defendant's motion and suppress all of the Defendant's statements as well as any physical evidence obtained.

**JEREL LESLIE**
By his attorney,

/s/  ***Albert F. Cullen, III***
BBO# 561223
60 K Street
Boston, MA 02127

Dated: November 18, 2005                    (617) 268-2240

         I, Albert F. Cullen, certify that I understand that all counsel will receive electronic notice of the electronic filing of this pleading.

/s/ ***Albert F. Cullen, Jr.***
Albert F. Cullen, Jr.

# ATTACHMENT 1
### (Map of Area Pleasant Street and Oakland Avenue, Brockton )



# ATTACHMENT 2
(Intersection of Glenwood Street and Pleasant Street)



# ATTACHMENT 3
(Intersection of Newbury Street and Pleasant Street)



# ATTACHMENT 4
(Intersection of Oakland Ave. and Pleasant Street)



